**In re John Wendell TOMPKINS, Jr., Debtors.**

**Christine Voss, Plaintiffs,**

v.

**John Wendell Tompkins, Jr., Defendants.**

**Bankruptcy No. 01–24720.**
**Adversary No. 02–2030.**

United States Bankruptcy Court, W.D. New York.

Feb. 12, 2003.

John A. Belluscio, Rochester, NY, for debtors.

## DECISION & ORDER

JOHN C. NINFO, II, Chief Judge.

### BACKGROUND

On December 12, 2001, John Wendell Tompkins, Jr. (the "Debtor") filed a peti-

tion initiating a Chapter 7 case. On the Schedules and Statements required to be filed by Section 521 and Rule 1007, the Debtor indicated that: (1) he was employed as an independent contractor for Nothnagle Realtors, earning approximately $1,500.00 per month; (2) his scheduled living expenses were $1,498.00 per month; and (3) he had potential unsecured debt of $37,366.40, $26,000.00 of which was for a May 9, 2001 judgment (the "Voss Judgment") in favor of Christine Voss ("Voss").

On January 22, 2002, Voss commenced an Adversary Proceeding against the Debtor to have the Voss Judgement determined to be nondischargeable pursuant to Section 523(a)(6).[1]

The Complaint in the Adversary Proceeding alleged that: (1) on October 2, 1998, Voss commenced an action (the "Sexual Harassment Action") in the United States District Court of the Virgin Islands Division of St. Thomas & St. John (the "District Court") against: (a) the Debtor, individually, and in his capacity as a store manager for Amsterdam Sauer, Inc. ("Amsterdam"); (b) Amsterdam; and (c) Ruben Borushek ("Borushek"), individually and in his capacity as a general manager for Amsterdam; and (2) the complaint in the Sexual Harassment Action, which included causes of action for Sexual Harassment and Discrimination, Wrongful Discharge, Intentional Infliction of Emotional Distress, Assault and Battery and Negligent Hiring and Supervision, alleged that: (a) when Voss was a sales clerk at Amsterdam's Havensight jewelry store (the "Havensight Store") in St. Thomas, she was "constantly subjected to unwanted sexual harassment, molestations, requests for

sexual favors and other conduct of a sexual nature. Defendant Tompkins refused to heed Plaintiff's several requests to be left alone and allowed to perform her work within an employment environment free from hostile sexual content"; and (b) the Debtor had engaged in the same and similar conduct with other female subordinates, resulting in their transfer to other stores or voluntary or involuntary termination. The Complaint further alleged that: (1) on or about October 13, 1999, Voss and the Debtor executed a settlement agreement (the "Settlement") which provided for a consent judgment of $25,000.00 in the event that the Debtor failed to make certain payments provided for in the Settlement; (2) on May 8, 2001, after the Debtor defaulted under the Settlement, the District Court entered an Order that enforced the Settlement and granted the Voss Judgment; and (3) the Voss Judgment should be determined to be nondischargeable, pursuant to Section 523(a)(6), because it was based upon incidents in which the Defendant engaged in tortious conduct toward Voss, which was malicious and willful and caused her injury.

On February 26, 2002, the Debtor interposed an Answer in the Adversary Proceeding which: (1) denied that the Voss Judgment was based upon incidents in which the Defendant engaged in tortious conduct toward Voss which was malicious and willful, and caused her injury; and (2) asserted that any settlement in the Sexual Harassment Action was reached for financial reasons and without any admission as to the facts set forth in the complaint in the Action.

1. 11 USC § 523. Exceptions to discharge.
 (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]
11 U.S.C. § 523 (2002).

At an April 30, 2002 pretrial conference, the Court was advised that the causes of action against Amsterdam and Borushek in the Sexual Harassment Action had been settled for a payment of $100,000.00.

On September 10, 2002, when Voss could be in the United States, the Court conducted a trial in the Adversary Proceeding at which Voss and the Debtor testified.

At the trial, Voss testified that:

1. She was raised in Chicago, and in October 1996, she moved to St. Thomas where her brother resided;

2. In October 1997, she applied for a sales position at the Havensight Store which sold high-end jewelry at discounted prices and was located in the Havensight Mall near where the cruise ships docked;

3. She filled out her job application with the Debtor and was later hired by Borushek after he reviewed her application;

4. She began work on October 22, 1997 under the direct supervision of the Debtor, who, she admitted, taught her everything she needed to know about her position, and whom she described as friendly and complimentary, but "touchy";

5. During the course of her employment, the Debtor would, on occasion: (a) grab her hips or arms in a sexual caressing manner when walking behind her when she was at the jewelry counter; (b) compliment her about how well she was dressed and how smart she was; (c) compare her to his ex-girlfriend; (d) make comments about his ex-girlfriend's breasts; (e) speak about tattoos, saying that Voss would look great with one on her ass; (f) smell her hair or perfume when passing her; and (g) make other comments that she did not believe were appropriate for the workplace;

6. She was afraid to approach the Debtor or challenge him on these physical contacts and comments, or to complain to other employees or representatives of Amsterdam, because the Debtor was her boss;

7. On occasion, the Debtor would bring her into the office and lock the door, but then he would only talk about things like the weather;

8. Although she did not confront the Debtor at the Havensight Store either verbally or physically for his inappropriate contacts or comments, Voss would often walk away or roll her eyes, so that, in her opinion, her body language made it clear to him that she was uncomfortable with his words or actions;

9. In the later periods of her employment, Voss became concerned and afraid of the Debtor, so she would sometimes call in sick, but then the Debtor would call her at home several times a day asking about her and offering to bring food to her home;

10. Eventually Voss screamed and cursed at the Debtor on the telephone, threatened to leave her employment, and asked for a transfer to Amsterdam's main store on St. Thomas;

11. She stayed on longer in her employment than she otherwise would have if the Debtor had not misled her about being transferred to the main store;

12. While employed with Amsterdam, she at one time took an evening job as a barmaid in a high-end establishment, and on occasion the Debtor would come to the establishment and sit and drink for hours;

13. There were times at the Havensight Store when the Debtor made physical gestures to her, when the customers and other employees could not see him, which consisted of winking, kissy-faces, and what she described as oral sex gestures;

14. It seemed to her that the Debtor was always watching her;

15. She spoke with her medical provider because she was depressed for several weeks and embarrassed that she could not stand up to the Debtor, and, as a result, she took antidepressants;

16. She never verbally told the Debtor to stop touching her;

17. None of the other employees at the store saw or heard any of the physical contacts or comments between the Debtor and Voss which she felt were inappropriate;

18. She did on occasion discuss some of the Debtor's inappropriate contacts and comments with several of the other employees who worked in the vaults and with her boyfriend;

19. She did not initially quit her job at Amsterdam despite all of the problems she was having with the Debtor, because it was a better and more interesting job than many of the jobs she had previously held working in bars and restaurants; and

20. When she finally decided to resign from her employment with Amsterdam, she went to Borushek and told him that the Debtor had been harassing her, and he simply laughed.

At the trial, the Debtor testified that:

1. he never said anything to Voss that could be interpreted as having sexual overtones;

2. the only time he touched Voss was when he needed to pass behind her at the topaz counter, and then he would place his hand on her elbows in order to move behind her, but that did not happen often;

3. he never requested any sexual favors of Voss;

4. Voss never told him to stop talking to her in a sexual manner, or touching her, and she never verbally indicated that she felt that he was harassing her;

5. he never called Voss at home; he did not even know her telephone number;

6. he never signed any settlement agreement with Voss, and he never agreed to the terms of the letter that his attorney wrote to her attorney;

7. when he and Voss were in the office, he never locked the door;

8. although he may have complimented Voss on her clothing, he never spoke about her figure or her body, but said things such as, "your hair looks nice," or "your dress looks nice";

9. he may, in passing, have said to Voss that her perfume smelled nice;

10. he never went alone to a bar or restaurant where Voss was working, but one or more times with his girlfriend, Georgina, he may have gone to an establishment where she was working;

11. he never made gestures of a sexual nature when Voss was present at the Havensight Store;

12. he was residing in New York when the Summons and Complaint in the Sexual Harassment Action was served upon him; and

13. he had not accepted his attorney's advice to file a Chapter 13 petition,

because he never did any of the things that Voss alleged he did.

## DISCUSSION

### I. Section 523(a)(6)

 We know from the Decision of the United States Supreme Court in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (*"Geiger"*) that the exception to discharge set forth in Section 523(a)(6) for a willful and malicious injury: (1) covers acts done with the actual intent to cause injury; (2) does not cover deliberate or intentional acts that merely lead to injury; (3) covers intentional torts that require the actor to intend the consequences of an act, not simply the act itself; and (4) does not cover recklessly or negligently inflicted injuries.

Notwithstanding *Geiger*, Bankruptcy Courts have held that a finding of sexual harassment discrimination under Title VII is inherently an intentional tort that falls within the discharge exception for willful and malicious injury. *See In re Clifford F. Smith*, 270 B.R. 544 (Bankr.D.Mass.2001); *In re Kelly*, 238 B.R. 156 (Bankr.E.D.Mo. 1999).

### II. The Voss Judgment

 It is undisputed that: (1) the Debtor appeared in the Sexual Harassment Action and denied the allegations in the Complaint; (2) Voss has not produced a written agreement signed by the Debtor settling the Sexual Harassment Action; (3) although Voss has produced a copy of a settlement offer made by the Debtor's attorney in the Sexual Harassment Action and a letter of acceptance from her attorney in the Action (together, the "Alleged Settlement"), the Debtor denied that his attorney had the authority to make the settlement offer and he testified that when he received a copy of the Settlement Offer he notified his attorney that he did not agree with it; (4) Voss has not produced any other evidence indicating that the Debtor ratified the Alleged Settlement; (5) the settlement offer does not state that the Debtor admitted any of the acts set forth in the Complaint in the Sexual Harassment Action, indicating that it is possible, as testified to by the Debtor, that even if there had been authority for the settlement offer, it was not because of guilt, but was for financial reasons only; and (6) in the Voss Judgment, entered by United States Magistrate Judge Geoffrey W. Barnard, although there is a finding that there was an enforceable settlement agreement reached between Voss and the Debtor, Voss has not produced the underlying motion papers, nor a transcript of the hearing before the Magistrate Judge, and the Voss Judgment does not indicate that there was any determination made by the District Court that the underlying causes of action in the Complaint were valid or had been admitted by the Debtor.

As a result of the foregoing, this Court cannot find that the relitigation of the underlying issues concerning Title VII sexual harassment and hostile work environment discrimination is barred by the doctrine of collateral estoppel. Thus, this Court considers the merits of the Sexual Harassment Action in light of the evidence produced in this Adversary Proceeding as a basis for determining the nondischargeability of the Voss Judgment under Section 523(a)(6).

### III. Sexual Harassment

 Under Title VII, "[i]t shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because

of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The United States Supreme Court has interpreted the statutory language of Title VII to provide for two separate classifications of discriminatory conduct that constitute sexual harassment under Title VII, *"quid pro quo"* and "hostile work environment." Whether classified as *quid pro quo* or hostile work environment, the aggrieved party must prove, by a preponderance of the evidence, that the employer's discriminatory conduct altered the terms and conditions of his/her employment.

## A. *Quid Pro Quo*

Cases involving employer demands for sexual favors from an employee in return for a tangible job benefit, or threats to retaliate against the employee if the employee denied some sexual liberties are often referred to as *quid pro quo* cases. In such cases, the explicit demands that result in the change in the terms and conditions of employment are actionable discrimination under Title VII. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

None of the evidence produced in this Adversary Proceeding, including the testimony of Voss and the Debtor, indicates that the Debtor's conduct amounted to *quid pro quo* discrimination. Voss never testified that there had been a sexual assault, a request for sexual favors, or a threat made and carried out when sexual favors or liberties were requested by the Debtor and subsequently denied by her. Therefore, the Court is left to consider whether the Debtor's conduct subjected Voss to a hostile working environment.

## B. *Hostile Work Environment*

■ Sexual harassment is also actionable under Title VII in cases where an employer's sexually demeaning behavior subjects the employee to a hostile work environment. Bothersome attentions or sexual remarks that are sufficiently severe or pervasive to alter the terms and conditions of employment create a hostile work environment. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (comments including "loosen up ... I could make your life very hard or very easy" and "are your wearing shorter skirts yet ... because it would make your job a heck of a lot easier" created a hostile work environment).

■ In determining if an employer's discriminatory conduct creates a hostile work environment, Courts look at all circumstances, including frequency, severity, whether it is physically threatening or humiliating or a mere offensive utterance. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (a five-year period of uninvited and offensive touching, lewd remarks, crudely demeaning references to women and comments indicating a desire to engage in sex with female employees created a hostile work environment). "Simple teasing, off-hand comments and isolated incidences (unless extremely serious) will not amount to discriminating changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275.

■ To prevail on hostile work environment claim of sexual harassment, the employee must show that the conduct at issue is so severe or pervasive as to create an objectively hostile or abusive work environment, and that the employee subjectively perceived the environment as hostile. *See Richardson v. New York State Department of Correctional Service*, 180 F.3d 426, 436 (2d Cir.1999). Furthermore,

the employee must produce evidence that the workplace is permeated with discriminatory intimidation, ridicule and insult, that is sufficiently severe or persuasive to alter the conditions of the victim's employment. *See Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 69 (2d Cir. 2000); *Quinn v. Green Tree Credit Corporation,* 159 F.3d 759, 768 (2d Cir.1998) (comments regarding female employee's posterior and deliberate touching of her breasts, were sufficiently isolated and discrete to find that the employer's conduct, although offensive, did not create a hostile work environment).

■■■ After hearing the testimony of Voss and the Debtor and evaluating the credibility of that testimony, I find that: (1) although the Debtor may have done or said some of the things that Voss testified to, her testimony as to his words, conduct and actions appeared considerably exaggerated; and (2) even if everything that Voss testified to was true, I do not believe objectively or subjectively, that the Debtor's conduct rises to the level of sexual harassment discrimination as set forth in the decisions of the United States Supreme Court and the U.S. Court of Appeals for Second Circuit. Specifically, even the most serious allegation by Voss that the Debtor touched her in a sexual caressing nature when passing behind her, if true, and the Court does not find her characterization to be credible, would not be sufficient to qualify as a hostile work environment when considered among the totality of the circumstances.

As such, Voss has not demonstrated that a reasonable trier of fact could conclude that the Debtor's conduct was so pervasive and severe that it objectively or subjectively created the kind of hostile work environment that would support a claim of sexual harassment under Title VII.

By no means, however, does the Court's finding condone any of the Debtor's conduct that may have been as was testified to, which anyone would agree was inappropriate.

## IV. *Further Considerations*

Notwithstanding the Court's finding herein, the failure of Voss to prove sexual harassment under Title VII does not summarily preclude the Voss Judgment from being determined to be nondischargeable under Section 523(a)(6). However, absent a finding of sexual harassment under Title VII that some Courts have found necessarily makes the conduct and resulting damage fall within the discharge exception, Voss must demonstrate that the Debtor's conduct was willful and malicious as required by the *Geiger* standard, which covers acts done with actual intent to cause both injury and the consequences of an act, not simply the act itself.

Based upon the record before the Court, Voss has not produced sufficient evidence that the Debtor intended to cause her injury so as to render the Voss Judgment nondischargeable under the *Geiger* standard.

## V. *Miscellaneous*

At the close of the trial, the attorney for the Debtor indicated to the Court that, notwithstanding the understandable policies, rules and procedures of the Bankruptcy Code and the Bankruptcy Rules, designed to afford an honest but unfortunate debtor a fresh start, it was unfortunate that this Adversary Proceeding was required to be tried in Rochester, where the Debtor now resides and filed his bankruptcy, rather than in St. Thomas. Perhaps in St. Thomas other witnesses might have been available to testify to: (1) the reasons why Amsterdam and Borushek settled in the Sexual Harassment Action

for $100,000.00; and (2) patterns of behavior of the Debtor.

Perhaps it is true that location of trial was unfortunate for Voss, however, as correctly pointed out by the attorney for Voss, venue for the Adversary Proceeding is established by the Bankruptcy Code and Rules to carry out the underlying policies of Congress.

In addition, it would be inappropriate for this Court to infer too much from either the Amsterdam–Borushek settlement or the allegations by Voss about a pattern of behavior, which are clearly hearsay.

### *CONCLUSION*

Since Voss has failed to meet her burden to demonstrate that the Debtor's alleged discriminatory conduct constitutes sexual harassment that is actionable under Title VII, and the Court does not believe that the Debtor's conduct otherwise meets the requirements of *Geiger* and Section 523(a)(6), the indebtedness evidenced by the Voss Judgment is discharged.

**IT IS SO ORDERED.**